## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN JACQUES,<br>          *Plaintiff(s)*,<br><br>          v.<br><br>GOMES, *et al.*,<br>          *Defendant(s)*. | No. 3:21-cv-804 (VAB) |

### INITIAL REVIEW ORDER

Jean Jacques ("Plaintiff"), is currently confined at MacDougall-Walker Correctional Institution in Suffield, Connecticut, and has filed a Complaint under 42 U.S.C. § 1983 against thirteen state law enforcement officers and his former landlord (collectively, "Defendants"). The claims brought against the Defendants primarily relate to searches and seizures that occurred in June and July of 2015.

For the reasons set forth below, the Complaint is **DISMISSED** in its entirety.

Considering this Ruling and Order, Mr. Jacques has until **January 13, 2023,** to file an Amended Complaint, to the extent any claim not dismissed with prejudice herein can be addressed.

### I.       BACKGROUND

On June 15, 2015, Norwich law enforcement officers allegedly stopped Mr. Jacques outside of a store and searched his person for drugs and weapons. Compl., ECF No. 1 at 8, ¶ 2. Although Mr. Jacques allegedly was not in possession of contraband, he was, nonetheless, arrested. *Id.* Law enforcement allegedly subsequently conducted a warrantless search of Mr.

Jacques' apartment. *Id.*, ¶ 5, This search also allegedly uncovered no evidence of a crime. *Id.* at 8, ¶ 6.

The next day, Mr. Jacques allegedly participated in a court proceeding, where prosecutors alleged that Mr. Jacques was currently on parole and that undercover law enforcement officers had observed him selling cocaine. *Id.* at 8, ¶ 3.[1] On the basis of these claims, Mr. Jacques allegedly was taken to prison. *Id.*

On June 16, 2015, law enforcement officers allegedly twice searched Mr. Jacques' apartment without a warrant. *Id.* at 9, ¶¶ 7-8. Although these searches allegedly uncovered no evidence of a drug-related crime, law enforcement allegedly did obtain evidence that was later used to apply for search and arrest warrants related to the murder of Casey Chadwick. *Id.* at 8-9, 15, ¶¶ 3, 7-8, 38.

On June 19th and 21st of 2015, law enforcement officers, again, allegedly searched Mr. Jacques' apartment without a warrant, and, again, uncovered no evidence of a drug-related crime. *Id.* at 9-10, ¶¶ 9-11, 14. Mr. Jacques' landlord, Antonio Barros, allegedly facilitated these latter searches by providing law enforcement with an apartment key. *Id.* at 10, ¶ 13. In addition, Mr. Barros allegedly informed law enforcement about a hole in an apartment wall located behind a toilet. *Id.* at 10, ¶ 12. Law enforcement allegedly searched this hole in June, but found nothing within it. *Id.* at 10, ¶ 12.

On June 25, 2015, prosecutors allegedly charged Mr. Jacques with the murder of Casey Chadwick. *Id.* at 13, ¶ 25. On July 15, 2015, in the course of investigating Ms. Chadwick's

---

[1] Mr. Jacques alleges that that he was not actually on parole at the time of his arrest. ECF No. 1 at 14-15, ¶ 36.

murder, law enformcement allegedly conducted yet another warrantless search of Mr. Jacques'
apartment. *Id.* at 11, ¶ 15. This time, when searching the hole in the wall behind the toilet, law
enforcement allegedly discovered a bag containing drugs and a cell phone. *Id.* at 11, 17, ¶¶ 17,
50. Investigators alleggedly subsequently determined that the cell phone had belonged to Ms.
Chadwick. *Id.* at 12, ¶ 20. However, Mr. Jacques allegedly questions whether this was truly the
case. *Id.*, ¶¶ 20-23. And he further alleges that law enforcement planted this incriminating
evidence. *Id.*, ¶ 24.

During the investigation of Ms. Chadwick's murder, Mr. Jacques alleges—without
elaborating on his claims—that law enforcement officers "fabricated" evidence, coerced false
witness statements, and withheld exculpatory evidence. *Id.* at 18, ¶¶ 52-53.

On April 11, 2016, after considering evidence obtained through the June 15, 2022, search
of Mr. Jacques' apartment, a jury allegedly found Mr. Jacques guilty of Ms. Chadwick's murder.
*Id.* at 18, ¶ 55. However, the Connecticut Supreme Court allegedly subsequently determined that
law enforcement officers had violated Mr. Jacques' Fourth Amendment rights by searching his
apartment without a warrant, and that the trial court had erred by not suppressing evidence
obtained through this search. *Connecticut v. Jacques*, 332 Conn. 271, 293-94 (2019). Further,
because appellate prosecutors allegedly had neglected to brief a harmless error argument, the
Supreme Court determined that it was necessary to reverse Mr. Jacques' murder conviction. *Id.*[2]

---

[2] In a concurring opinion, two Supreme Court Justices opined that the prosecution's case against Mr.
Jacques was "overwhelming" even without evidence obtained through the June 15, 2020, search of Mr. Jacques'
apartment. *Connecticut v. Jacques*, 332 Conn. 271, 295 (2019) (Kahn, J., concurring). These Justices conveyed that
they would have voted to affirm Mr. Jacques' murder conviction had prosecutors not waived a harmless error
argument. *Id.* at 299.

Since the filing of the complaint in this case, a jury allegedly has, again, found Mr. Jacques guilty of Ms. Chadwick's murder. Mr. Jacques allegedly is currently serving a 60-year prison sentence.[3]

## II.    STANDARD OF REVIEW

Under 28 U.S.C. § 1915A(b), district courts must review prisoners' civil complaints against governmental actors and *sua sponte* "dismiss . . . any portion of [a] complaint [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); *see also Liner v. Goord*, 196 F.3d 132, 134 & n.1 (2d Cir. 1999) (explaining that, under the Prisoner Litigation Reform Act, *sua sponte* dismissal of frivolous prisoner complaints is mandatory); *Tapia-Ortiz v. Winter*, 185 F.3d 8, 11 (2d Cir. 1999) ("Section 1915A requires that a district court screen a civil complaint brought by a prisoner against a governmental entity or its agents and dismiss the complaint *sua sponte* if, *inter alia,* the complaint is 'frivolous, malicious, or fails to state a claim upon which relief may be granted.'" (quoting 28 U.S.C. § 1915A)).

Rule 8 of the Federal Rules of Civil Procedure requires that a plaintiff plead only "a short and plain statement of the claim showing that the pleader is entitled to relief," *see* Fed. R. Civ. P. 8(a)(2), to provide the defendant "fair notice of what the . . . claim is and the grounds upon which it rests," *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

---

[3] Information available on the Connecticut judicial website under the search for pending criminal cases using Plaintiff's last name and first name initial. *See https://www.jud2.ct.gov/crdockets/SearchByDefDisp.aspx* (last visited November 28, 2022).

A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although the Federal Rules of Civil Procedure do not require "detailed factual allegations," a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement." *Twombly*, 550 U.S. at 555–57. Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claim] is improbable, and . . . recovery is very remote and unlikely." *Id*. at 556 (internal quotation marks omitted).

Complaints filed by *pro se* plaintiffs, however, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford pro se litigants).

### III.    DISCUSSION

Section 1983 of Title 42 of the United States Code creates a private federal cause of action against any person, acting under color of state law, who deprives an individual of federally or constitutionally protected rights. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).

In this § 1983 action, Mr. Jacques brings fifteen "counts" against the Defendants. ECF No. 1 at 19-23. For the most part, these claims pertain to alleged constitutional violations resulting from Mr. Jacques' arrest in June of 2015 and the subsequent warrantless searches of his apartment. *Id.* Mr. Jacques also brings malicious prosecution claims and state law tort claims (negligence, assault, and battery), and seeks an order compelling criminal prosecution of the Defendants for the criminal offense of tampering with evidence. *Id.* at 21-22, 24-25.

#### A.    The Claims Against Mr. Barros

The caption of Mr. Jacques's Complaint seeks relief under § 1983 claims against his former landlord, Mr. Barros. *Id.* at 1, 5. But, when stating his causes of action, Mr. Jacques does not purport to bring specific claims against Mr. Barros. *Id.* at 19-23. To the extent that Mr. Jacques intends to bring any §1983 claims against Mr. Barros, this claim lacks merit.

To establish § 1983 liability, a plaintiff must establish that a defendant acted "under color of" state law. *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Unlike the other Defendants named in this action, Mr. Barros is not a state employee. Mr. Barros' status as a private citizen does not foreclose the possibility of § 1983 liability. *See Id.* at 27-28 ("Private persons, jointly engaged with state officials in the challenged action, are acting [ ] 'under color' of law for purposes of § 1983 actions.") But private landlords do not incur § 1983 liability simply by cooperating with law enforcement officers performing a search of a tenant's residence. *See Studifin v. New York*

*City Police Dept.*, 728 F. Supp. 990, 993 (S.D.N.Y.) To act "under color of law," private landlords must conspire in the unlawful activities of state officials. *Id.*

Accordingly, because Mr. Jacques has alleged no facts supporting a finding of such a conspiracy, all § 1983 claims brought against Mr. Barros will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

      **B.**      **The Search and Seizure Claims**

The bulk of Mr. Jacques' § 1983 claims pertain to his June 2015 arrest and the June and July 2015 searches of his apartment. ECF No. 1 at 19-23. These claims assert violations of Mr. Jacques' Fourth, Fifth, Eighth, and Fourteenth Amendment rights. *Id.*

The Court does not interpret Mr. Jacques' substantive pleading as alleging any Fifth, Eighth, or free-standing Fourteenth Amendment claims. But Mr. Jacques has alleged facts permitting an inference that at least some of the Defendants violated his Fourth Amendment rights through their allegedly warrantless searches of his apartment. *See Fernandez v. California*, 571 U.S. 292, 298 (2014) ("Our cases establish that a warrant is generally required for a search of a home…") Indeed, the Connecticut Supreme Court has already held that law enforcement unlawfully searched Mr. Jacques' apartment on July 15, 2015. *Jacques*, 332 Conn. at 293-94.

Although Mr. Jacques has plausibly alleged violations of his Fourth Amendment rights, any § 1983 claims arising from these violations are time-barred. A district court may consider whether a claim is time-barred *sua sponte* when "the facts supporting the statute of limitations defense are set forth in the papers [the] plaintiff himself submitted." *Walters v. Indus. and Commercial Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011) (quotation marks and citation omitted). Consideration of a statute of limitations defense during initial screening "is especially

appropriate" when "the injuries complained of occurred more than five years before the filing of the complaint … there are no applicable tolling provisions as a matter of law, and [the] plaintiff has alleged no facts indicating a continuous or ongoing violation of his constitutional rights." *Pino v. Ryan*, 49 F.3d 51, 54 (2d Cir. 1995).

Because federal law provides no statute of limitations for § 1983 claims, federal courts must "borrow" claim filing deadlines from state law. *Lounsbury v. Jeffries*, 25 F.3d 131, 133 (2d Cir. 1994). "Courts in this district generally subject § 1983 claims to the three-year limitation period provided by Connecticut General Statutes § 52-577, which pertains to general tort claims not specifically covered by different limitations provisions." *Santana v. Quiros*, 3:21-cv-376 (SVN), 2022 WL 16706959 at * 5 (D. Conn. Nov. 4, 2022). Thus, Mr. Jacques' Fourth Amendment claims must be filed within three years of the searches and seizures alleged in his complaint. *See Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) ("[A]ccrual occurs when the plaintiff knows or has reason to know of the injury which is the basis of his action.") (quotation marks and citation omitted)).

Law enforcement officials, however, arrested Mr. Jacques, and subsequently searched his apartment, in the summer of 2015. But Mr. Jacques did not file his Complaint until June 15, 2021. While statute of limitation periods were tolled in the state of Connecticut from March 19, 2020, to March 1, 2021, *see Santana*, 2022 WL 16706959 at *6, this tolling period is of little avail for Mr.

8

Jacques's claims. He had to have brought them by the summer of 2018.And Mr. Jacques alleges no facts suggesting that any other basis for tolling applies to this case.

Accordingly, Mr. Jacques unlawful search and seizure claims will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### C.    The Malicious Prosecution Claims

The Fourth Amendment generally forbids state actors from initiating a criminal proceeding against an individual without probable cause and for a primary purpose other than that of bringing an offender to justice. *Turner v. Boyle*, 116 F. Supp. 3d. 58, 84-85 (D. Conn. 2015). To prove § 1983 malicious prosecution claim, a plaintiff must show, *inter alia*, "that [a] criminal prosecution ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1341 (2022).

Mr. Jacques brings Fourth Amendment malicious prosecution claims against some of the Defendants. ECF No. 1 at 21. Because Mr. Jacques' criminal prosecution continued until the filing of this Complaint, Mr. Jacques' malicious prosecution claims are not time-barred. But,Mr. Jacques has been twice convicted of murdering Ms. Chadwick. And two Justices sitting on the Connecticut Supreme Court have opined that the evidence of Mr. Jacques' guilt is "overwhelming." *Jacques*, 332 Conn. at 295 (2019) (Kahn, J., concurring). Thus, Mr. Jacques'

malicious prosecution claims are not based on "[a] criminal prosecution [that] ended without a conviction." *Thompson v. Clark*, 142 S.Ct. 1332, 1341 (2022).

Accordingly, Mr. Jacques' malicious prosecution claims will be dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**D.     State Law Claims**

In addition to his § 1983 claims, Mr. Jacques seeks to bring state tort claims. ECF No. 1 at 21-22. But, having dismissed all of Mr. Jacques' federal claims, this Court declines to exercise jurisdiction over these state tort claims.  *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.").

Accordingly, Mr. Jacques' state law claims will be dismissed without prejudice to his right to pursue them in state court.

**E.     Order Compelling Criminal Prosecution**

In his prayer for relief, Mr. Jacques asks the Court to compel the prosecution of the Defendants for the state criminal offense of tampering with evidence. ECF No. 1 at 23-24. However, the Second Circuit has rejected the notion that a federal court may compel state prosecutors to initiate criminal prosecutions for violations of state law. *See Inmates of Attica Correctional Facility v. Rockefeller*, 477 F.2d 375, 382 (2d Cir. 1973) ("The very elaborateness of the relief believed by plaintiffs to be required indicates the difficulties inherent in judicial supervision of prosecutions, federal or state, which render such a course inadvisable.").

Accordingly, Mr. Jacques' request for a criminal prosecution will be dismissed, along with his claims. *See* 28 U.S.C. § 1915A(b)(1).

**ORDERS**

The Court enters the following orders:

(1)    The § 1983 claims asserted against the Defendants are **DISMISSED with prejudice**, except for his search and seizure claims, to the extent that he can allege a basis for tolling these claims not already stated in the Complaint, and that would be recognized under the prevailing law.

(2)    The state tort claims asserted against the Defendants are **DISMISSED without prejudice** to Mr. Jacques' right to pursue such claims in state court.

(3)    The request for a criminal prosecution of the Defendants is **DISMISSED with prejudice**.

In light of this Ruling and Order, Mr. Jacques has until **January 13, 2023,** to file an Amended Complaint, to the extent any claim not dismissed with prejudice herein can be addressed.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of December, 2022.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

11